Florence M. Bruemmer, #019691
**LAW OFFICE OF FLORENCE M. BRUEMMER, P.C.**
42104 N. Venture Dr., Suite A122
Anthem, AZ 85086
Telephone: (623) 551-0380
Fax: (623) 551-0483
florence@bruemmerlaw.com

Elliot S. Isaac, #013882
**ELLIOT S. ISAAC, P.C.**
14820 N. Cave Creek Rd., #3
Phoenix, AZ 85032
Telephone: (602) 404-0099
isaaclawyer@gmail.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ALLAN SWITALSKI, an individual, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CREDIT UNION WEST, | **JURY DEMAND** |
| Defendant. | |

Plaintiff herby complains as follows:

1. Plaintiff Allan Switalski is a 54-year-old resident of Avondale, Arizona who held the position of Vice President of Marketing at defendant Credit Union West (the "Company" or "Defendant") from October 3, 2016 until February 10, 2020.

2. The Company is a domestic company that maintains its principal Arizona business in Glendale, Arizona. At all relevant times, Defendant has employed at least 190 employeesand has done business within this District

**JURISDICTION AND VENUE**

3. Because this case is brought under the ADEA, 29 U.S.C. § 621 *et seq.*, and Title VII, of the

1
**PLAINTIFF'S EMPLOYMENT DISCRIMINATION COMPLAINT**

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, this Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. Venue is proper in this judicial District because Defendant's unlawful acts of employment discrimination described herein occurred within Arizona. *See* 28 U.S.C. § 1391(b)(2). Venue is also proper in this judicial District because Defendant is found and maintains its primary Arizona business establishment within Arizona. See 42 U.S.C. §2000e-5(f)(3).

## FACTS

### Mr. Switalski's Steller Performance at Credit Union West

5. Plaintiff is a fifty-four-year-old male with an extensive professional career. He was hired by the Company as Vice President of Marketing on October 3, 2016. Plaintiff worked diligently to promote Company values and culture, until he was wrongfully terminated on February 10, 2020.

6. While working at the Company, Plaintiff earned a salary and bonus of approximately $176,000 per year; which included a full array of benefits.

7. Plaintiff's employment reputation was well known by the Company, as evidenced by the significantly high-performance reviews he received during all three (3) years of his employment. In fact, just thirteen (13) days before he was terminated, Plaintiff received a performance review indicating that he "Significantly Exceeded Expectations," in addition to a performance rating of 4.5 out of 5.

8. Not only did Plaintiff receive such a high-level rating, he also received a four and one-half percent merit salary increase.

### Mr. Switalski's Abrupt Termination

9. During his last performance review on January 28, 2020, the Company President Karen Roch commended Plaintiff on his "Significantly Exceeded Expectations" review. In response to such a rating, Plaintiff told Ms. Roch that he was interested in a promotion and additional job duties.

10. Ms. Roch responded negatively to Plaintiff's much earned request because shortly thereafter,

Plaintiff was terminated from his employment at Company. On February 10, 2020, Ms. Roch told Plaintiff that she had lost confidence in him.

11.  Prior to his termination, Plaintiff had never received a verbal or written warning.

### Defendant's Age and Gender Discrimination

12.  The Company and its Senior Leadership are predominantly female, and the Company has a reputation for promoting females under the age of forty. In fact, when Plaintiff was hired, Ms. Roch made it known during the interview process that she favored hiring a female for the VP of Marketing position. Fortunately for Plaintiff, Ms. Roch was instructed by Bob MacGregor, the Company's then president, to hire Plaintiff for the position. Ms. Roch's bias against Plaintiff was immediate, as she required him to prove his worth to the Company.

13.  Under Ms. Roch's tenure, only two males out of seven were direct line reports.

14.  Moreover, unlike the female direct reports, Plaintiff was never offered or provided a career development plan nor executive coaching guidance. Despite Plaintiff's annual requests for a career development plan, his requests were completely ignored.

15.  Plaintiff never received a warning or corrective action plan for any alleged errors he committed, although such a warning or corrective action plan was offered to the Company's female employees when warranted.

16.  In addition to Ms. Roch's failure to follow Company policies and proper practices, Ms. Roch's discriminatory actions continued when she filled Plaintiff's position with a female employee.

17.  The Company, through the actions of Ms. Roch, has a history of firing male employees and replacing them with female employees. For example, Robert MacGregor and David Smith (both male executives) were replaced with younger females.

18.  Following that same discriminatory practice, Ms. Roch terminated and replaced Plaintiff with a female employee. In fact, the replacement was the same female Ms. Roch wanted to hire for the VP of Marketing position, back in 2016. Upon information and belief, Ms. Roch coordinated with Yvonne

Ross to have that same female take Plaintiff's position after he was terminated, despite the fact that the female employee was less qualified for the position.

19. Although Ms. Roch hired Mr. Switalski over that female employee, she did not select him. Instead, Ms. Roch hired Plaintiff at the direction of Bob MacGregor. Notwithstanding Plaintiff's hire, Ms. Roch also terminated Plaintiff – the one male she was instructed to hire to place in his position the exact same female employee she favored at the outset.

20. As a direct and proximate result of Defendant's age and gender discrimination, Mr. Switalski was kicked out of his employment position; was deprived of the opportunity to further advance his well-established career with Credit Union West; and was forced to endure emotional distress due to the stain on his impeccable employment record.

### Arizona Civil Rights Division and EEOC Proceedings

21. On August 10, 2020, Mr. Switalski filed a charge of discrimination with the Arizona Civil Rights Division and United States Equal Employment Opportunity Commission (hereinafter, "EEOC") on Mr. Switalski's behalf. A copy of the Charge is attached hereto as Exhibit A.

22. On September 17, 2020, the EEOC issued a Right to Sue Letter.

23. This lawsuit has been filed within 90 days of the issuance of the Right to Sue Letter.

### COUNT ONE

### Sex Discrimination in Violation of Title VII

### of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

24. Plaintiff realleges and incorporates herein by reference the prior allegations.

25. Defendant engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), by terminating Plaintiff because of his sex.

26. Defendant terminated Plaintiff, a male because of its historic culture of favoring female employees. Additionally, Defendant has a pattern of replacing male executives with female employees. There was no legitimate business reason for Plaintiff's termination.

27. Defendant's unlawful employment practices persisted when it decided not to offer Plaintiff the same warnings or corrective action plans for the alleged "loss of confidence" incident; and through its refusal to provide Plaintiff with a career development plan or executive coaching guidance, as it offered to similarly situated female employees.

28. Because of Defendant's known unlawful employment practices, the Company's unlawful termination of Plaintiff was intentional and done with malice or reckless indifference to Plaintiff's rights under Title VII.

29. As a direct and proximate result of Defendant's foregoing unlawful employment practices, Plaintiff was deprived of equal employment opportunities and otherwise adversely affect his status as an employee, because of his sex.

WHEREFORE, Plaintiff Allan Switalski prays that this Court award him lost wages (including interest and benefits); front pay (including interest and benefits); pre-judgment interest; compensatory and punitive damages; emotional distress damages; reasonable attorneys' fees and all expenses and costs of this action; and such other and further relief as this Court deems necessary, just and proper, as against Defendant Credit Union West.

## COUNT TWO

**Age Discrimination in Violation of the ADEA, 29 U.S.C. § 621 *et seq.***

30. Plaintiff realleges and incorporates herein by reference the prior allegations.

31. Plaintiff filed a timely charge of age discrimination with the EEOC and has satisfied all preconditions to bringing this action.

32. Plaintiff has exhausted his administrative remedies, and timely files this suit following notice of his right to sue.

33. At all relevant times, Defendant has been, and continues to be, an employer within the meaning of the ADEA, 29 U.S.C. § 630. At all relevant times, the Defendant has been engaged in interstate commerce within the meaning of the ADEA, *Id.*, and has employed, and continues to employ, twenty

or more employees.

34. At all relevant times, Plaintiff was qualified for the position of Vice President of Marketing, and after Plaintiff's termination, his was replaced by a younger, less qualified female.

35. The ADEA prohibits employers from discharging any employee, who is at least 40 years old, because of such employees' age. *Id*. at 631(a).

36. At all relevant times, Plaintiff was and is at least 40 years old. Specifically, Plaintiff is 54 years old. And upon information and belief, Plaintiff's age was the cause of Defendant Credit Union West's discharge of Plaintiff. But for Plaintiff's age, he would have been offered a career development plan, like younger and/or female executive employees. Additionally, Plaintiff would have received proper notice and corrective action for his merit increase mistake, also like younger female employees.

37. Defendant's violations of the ADEA were intentional and willful.

38. As a direct and proximate result of the foregoing violations of the ADEA, Plaintiff has sustained injury, including, but not limited to lost wages and other benefits provided to Senior Executives employed by Defendant Credit Union West.

WHEREFORE, Plaintiff Allan Switalski prays that this Court award him lost wages (including interest and benefits); front pay (including interest and benefits); pre-judgment interest; compensatory and punitive damages; emotional distress damages; reasonable attorneys' fees and all expenses and costs of this action; and such other and further relief as this Court deems necessary, just and proper, as against Defendant Credit Union West.

RESPECTFULLY SUBMITTED this __9th__ day of December 2020.

By:   /s/ Florence M. Bruemmer
      Florence M. Bruemmer
      *Attorney for Defendant*

By:   /s/ Elliot S. Isaac
      Elliot S. Isaac
      *Attorney for Defendant*

1  STATE OF ARIZONA     )
                        )
2  COUNTY OF MARICOPA   )

3  ALLAN SWITALSKI, being duly sworn, deposes and says:

4  Deponent is the Plaintiff in this action. Deponent has read the foregoing: **COMPLAINT** and knows the
5  contents thereof; and the same is true to Deponent's own knowledge, except as to the matters therein
   stated to be alleged upon information and belief, and as to those matters Deponent believes them to be
6  true.

   [Notary seal: MARIA L JAMES, Notary Public - Arizona, Maricopa County, My Comm. Expires Jul 2, 2021]

   ALLAN SWITALSKI

   SWORN BEFORE ME this __8__ day of __DECEMBER__ 2020 by ALLAN SWITALSKI.

   Notary Public: Maria L James

   My commission expires: July 2, 2021